James Curtis Layne, a belt foreman employed by Jim Walter Resources, Inc. ("JWR"), was injured in a fall in a coal mine. He appeals from a summary judgment in a personal injury action he filed pursuant to Ala. Code 1975, § 25-5-11(c)(1), (c)(2), and (c)(4). Layne sued the following employees of JWR: James B. Beasley, mine manager; *Page 980 
William Carr, president of the mining division of JWR; William H. Hubbard, mine foreman; John T. "Buck" Piper, senior vice-president, operations; Charles Stewart, deputy mine manager; and Gerald D. Thomas, general mine foreman. The judgment for the six co-employee defendants was made final pursuant to Rule 54(b), A.R.Civ.P. We affirm.
On September 26, 1989, when Layne reported to work at JWR's No. 5 underground mine for his usual 11:00 P.M. to 7:00 A.M. shift, Hubbard gave him a list of safety problems that had been reported by the union safety committee during an earlier shift. As a belt foreman, Layne was responsible for maintaining underground conveyor belts. The list of safety problems included a broken bottom belt roller that was in contact with loose coal. To reach the broken roller, Layne had to wade through an accumulation of water on the mine floor. He inspected the roller to confirm that it was broken and then he returned to his crew. While returning through the water, Layne had an accident, which he described in these words:
 "I hung my feet in some rocks or some kind of trash in the water. When that happened, I fell forward. As I was falling, I tried to reach and grab a crib and I hyperextended my back. A crib is a stack of timber that is erected to provide support to the roof in a underground mine. I did not get a good hold of the crib and was not able to keep myself from falling. [Therefore,] I fell into the water. It was in the course of this fall that I injured my back."
Layne claims that the water was approximately 30 inches deep where he fell. He said the water was murky and, therefore, that it was impossible to determine what was in the water that caused his fall, but he alleges that an old rail track runs through the flooded area.
JWR had experienced problems with accumulated water in this particular area for at least a year before Layne's fall. JWR had installed a pump to drain the water from this area, but, either because of insufficient pumping capacity or because of faulty maintenance, the pump did not adequately drain the area. Layne claims that the accumulation of water was widely known to the defendants and that they had done nothing to remedy it. In particular, Layne claims that the co-employee defendants had done nothing to improve the pumping mechanism or to increase its capacity and that they had not removed, drained, or pumped away the accumulation before assigning Layne to work in that area, even though, he says, they had the authority, the discretion, and an obligation to do so. Layne claims that he was injured as a proximate result of the co-employee defendants' failure to remove the accumulation of water.
The co-employee defendants moved for a summary judgment and supported their motion by affidavits generally denying that they had had a purpose, intent, or design to injure Layne; and denying that they had had notice or knowledge of a violation of any safety rule with respect to the accumulation of water in the area where Layne was injured. The trial judge entered a summary judgment for the six co-employee defendants. Layne appealed.
Layne brought this action under Ala. Code 1975, § 25-5-11. That section provides that an employee injured in the scope of his employment may, in certain circumstances, bring an action for damages for his injuries, in addition to any recovery he may be entitled to under the Alabama Workers' Compensation Act. Section 25-5-11 provides as follows:
 "(b) If personal injury . . . to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer . . . the employee shall have a cause of action against the person. . . .
 "(c) As used herein, 'willful conduct' means any of the following:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.' *Page 981 
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.
". . . .
 "(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and intentional violation. The written notice to the violating employee shall state with specificity all of the following:
"a. The identity of the violating employee.
 "b. The specific written safety rule being violated and the manner of the violation.
 "c. That the violating employee has repeatedly and continually violated the specific written safety rule referred to in b. above with specific reference to previous times, dates, and circumstances.
 "d. That the violation places the notifying employee at risk of great injury or death.
 "A notice that does not contain all of the above elements shall not be valid notice for purposes of this section. . . .
A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue of fact. Ala. Code 1975, § 12-21-12; Mallisham v. Kiker,630 So.2d 420 (Ala. 1993); Specialty Container Mfg., Inc. v.Rusken Packaging, Inc., 572 So.2d 403 (Ala. 1990). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Layne argues that the trial judge erred in entering the summary judgment for these defendants because, he argues, their conduct constituted "willful conduct" as defined by §25-5-11(c)(1), (c)(2), and (c)(4). Layne emphasizes that it is well established both that the Workers' Compensation Act is to be liberally construed to effect its beneficent purposes and that all doubts should be construed in favor of the claimant.Moore v. Reeves, 589 So.2d 173, 177 (Ala. 1991). The legislative intent regarding co-employee actions is stated in § 25-5-14:
 "The legislature finds that actions filed on behalf of injured employees against . . . employees of the same employer seeking to recover damages in excess of amounts received or receivable from the employer under the workers' compensation statutes of this state . . . are contrary to the intent of the legislature in adopting a comprehensive workers' compensation scheme and are producing a debilitating and adverse effect upon efforts to retain existing, and to attract new industry to this state. . . . The existence of such causes of action has a disruptive effect upon the relationship among employees and supervisory and management personnel. . . . The intent of the legislature is to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer . . ., from civil liability for all causes of action except those based on willful conduct and such immunity is an essential aspect of the workers' compensation scheme. The legislature hereby expressly reaffirms its intent . . . regarding the exclusivity of the rights and remedies of an injured employee, except as provided for herein." *Page 982 
The legislature intended that an action be available for persons injured by co-employees, but it intended that an action against co-employees be limited to situations involving "willful conduct." The legislature set out three situations where, absent direct proof of an intent to injure, a co-employee's actions would be deemed to be "willful conduct." Those situations are set out in § 25-5-11(c)(2), (c)(3), and (c)(4).
We first address Layne's argument that the defendants' conduct constituted "willful conduct" as defined by §25-5-11(c)(1). Section 25-5-11(c)(1) defines willful conduct as the "intent or design to injure another." Layne acknowledges that an employee seeking to recover under this subsection carries a heavy burden. In Reed v. Brunson, 527 So.2d 102
(Ala. 1988), we described the evidence an employee must present in order to submit a case to a jury under § 25-5-11(c)(1). We required that the claimant show either:
 "1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions."
Reed v. Brunson, 527 So.2d at 120. (Emphasis omitted.) Evidence showing only knowledge and an appreciation of the risk of injury or death, short of a substantial certainty that injury or death would occur, is insufficient for the purpose of showing willful conduct under subsection (c)(1). Id. Therefore, the question becomes whether Layne presented substantial evidence that the accumulation of water in the mine was "substantially certain" to cause injury or death. The only evidence in the record relating to the defendants' knowledge of the water accumulation that allegedly caused Layne's injuries appears in the affidavit of Randy Clements, chairman of the UMWA Local 2368 Safety Committee. In his affidavit, Clements states that he noted the accumulation of the water as a safety violation. He said that the accumulation had been a safety problem for some time.
Layne produced no evidence that any of the defendants intended, or had a purpose, to injure anyone by their failure to pump away the accumulation of water, and no evidence that it was substantially certain that the accumulation would cause injury or death. Even though the co-employee defendants may have perceived a risk of injury, such a perception would be insufficient for a jury to infer that they acted with a purpose to injure Layne. See Burkett v. Loma Mach. Mfg., Inc.,552 So.2d 134, 138-39 (Ala. 1989); Reed v. Brunson, 527 So.2d at 120-21.
Layne next argues that the defendants' conduct constituted willful conduct under § 25-5-11(c)(2), which defines "willful conduct" to include the "willful and intentional removal from a machine of a safety guard or safety device." Layne acknowledges that the facts of this case are somewhat different from those of the typical cases involving safety guards removed from a machine in a factory setting. However, Layne argues that our construction of § 25-5-11(c)(2) in recent cases is such that it would cover the facts of this case. In Bailey v. Hogg,547 So.2d 498, 500 (Ala. 1989), for instance, we held that the intentional and willful failure to install a safety guard equated with the intentional and willful removal of a safety guard for the purposes of subsection (c)(2). In Harris v. Gill,585 So.2d 831, 839 (Ala. 1991), we held that the bypassing of a safety device constituted the removal of a safety device for purposes of subsection (c)(2). In Moore v. Reeves,589 So.2d 173, 178-79 (Ala. 1991), we held that the failure to maintain or repair a safety guard or device was tantamount to the removal of, or failure to install, a safety guard or device.
Section 25-5-11(c)(2) cannot be construed to allow a co-employee action in every situation where an employee is injured on the job. The legislature expressly limited exceptions to the exclusivity of the workers' compensation scheme. We recognized this in Mallisham v. Kiker, 630 So.2d 420
(Ala. 1993), where the plaintiff in a co-employee action under §25-5-11(c)(2) argued that mining safety is not as concerned with machines as manufacturing safety is, and that, therefore, § 25-5-11(c)(2) should be extended, in the *Page 983 
mining context, to include devices pertaining to the safety of the mine itself. 630 So.2d at 423. In rejecting the plaintiff's arguments in Mallisham, we said:
 "The legislature has retained a limited right of action against a co-employee under § 25-5-11(c)(2) for the removal of a manufacturer's safety device from a machine, not the removal or omission of any safety device from any workplace environment. Such a change in the law must be left to the legislature."
630 So.2d at 423-24. (Emphasis original; footnote omitted.) InMallisham, the plaintiff argued that work had continued in a mine shaft in which the "ribs," beams supporting the walls and the roof of the mine, had not been placed at the required intervals. Because the ribs were not placed at the required intervals, a boulder rolled from the mine wall and injured the plaintiff. We affirmed the trial court's holding that the timbers that make up the ribs are not a part of a machine. We said in Mallisham that a mine was not a machine, and, therefore, that the failure to install the ribs was not a failure to install a safety device on a machine.
We hold that the failure to repair the pump or to improve its pumping capacity to keep the mine free of water is not the equivalent of the failure to repair a safety device on amachine, and, therefore, does not constitute "willful conduct" under § 25-5-11(c)(2).
Layne's third argument is that the co-employee defendants' actions constituted willful conduct as defined by §25-5-11(c)(4). That section, however, states explicit requirements for a finding of willful conduct under that section. It requires that the injured employee have given written notice, which notice must conform to certain specifications, to the offending co-employees within the six months before the injured employee's accident. Layne argues that notice of a violation of a written safety rule is sufficient to state a cause of action under this subsection. However, the statute requires more. Subsection (c)(4) also requires that the notice come from the injured employee and that the notice contain certain items. In keeping with the legislative intent that actions against co-employees be allowed as a limited exception to the exclusivity of the workers' compensation scheme, we hold that, for an employee to bring an action under subsection (c)(4), the required notice must substantially conform to the requirements of that subsection. Layne does not argue that the notice conforms to the requirements, nor does he argue that he was the one giving the co-employees notice. Therefore, we hold that the trial judge correctly held that Layne's action could not proceed under §25-5-11(c)(4).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.