YATES, Judge.
These appeals are from a summary judgment. In a previous appeal in this action, which appeal involved other defendants, our supreme court set forth some of the history of this case:
“On July 3, 1989, an explosion at the 3M Corporation chemical plant in Decatur killed John Crawford, Jerry Wilkerson, and James Michael Martin and injured Joe Charles Rains. The four men were attempting to repair a leak in vessel 403-A-23, a 500-gallon chemical-blending tank, when the tank exploded. On July 3, 1991, the widows of the thréé men killed filed separate actions, each seeking to recover damages for the death of her husband, alleging product liability claims against five corporate defendants, and alleging claims pursuant to § 25-5-11, Ala.Code 1975, against three co-employees [one of whom is defendant John J. Martin]. Joe Charles Rains brought an identical action, seeking to recover damages for the injuries he sustained as a result of the explosion. The complaints also alleged claims against an extensive list of fictitiously named defendants. The actions were consolidated for discovery.
“On June 25, 1993, Martin, Wilkerson, and Rains filed amendments to their complaints in which they substituted [several co-employees]. [They sought] damages, pursuant to § 25-5-11, for willfully failing to provide a safe workplace for the four men.
“The [substituted] defendants filed motions for summary judgment in each of the four actions, contending that the claims against them were barred by the statute of limitations.... The circuit court held a hearing on the motions, entered judgments for these six defendants, and certified the judgments as final pursuant to Rule 54(b), Ala. R. Civ. P.”
Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala.1996) (affirming the trial court’s summary judgment as to the substituted defendants).[1]
In 1980, 3M Corporation employed an outside consultant, Dr. Chester Grelecki, to perform certain tests on “CTFE,” the chemical stored within the tank. 3M Corporation was concerned that additional safeguards might be warranted in the handling and processing of CTFE. Specifically, Dr. Grelecki was to determine whether oxygen at certain levels would react with CTFE, and, if so, the reaction time. Dr. Grelecki’s report indicated that “in the presence of small concentrations of oxygen, [the CTFE] will be consumed slowly without ignition, whereas large concentrations of oxygen will cause spontaneous ignition.”
In November 1988, eight months before the explosion occurred, John J. Martin, plant manager, had signed a purchase order for materials necessary to upgrade and increase the size of the relief system on the tank. The purchase order indicated that the relief system on the tank was inadequate and that a “large release of high pressure monomer would probably rupture the tank.”
At the time of the July 1989 explosion, the tank was being used to store CTFE. *389 After the explosion, 3M Corporation hired Dr. Grelecki to conduct an investigation. His investigation revealed that the explosion had occurred when oxygen from the atmosphere mixed with the CTFE, causing a reaction; he concluded that the explosion occurred because the relief system was inadequate to reheve the pressure fast enough. The relief systems referred to in the 1988 purchase order had not been installed on the tank at the time of the explosion. In connection with the explosion, OSHA issued a citation to 3M Corporation for a serious violation of regulations.
The plaintiffs filed this co-employee action against Martin, pursuant to § 25-5-11, Ala.Code 1975, which provides a cause of action for acts of a co-employee that are willful or intentional. On August 1, 1996, Martin moved for a summary judgment, arguing that he was not guilty of “willful conduct” as defined in § 25-5-11. The plaintiffs filed an opposition to Martin’s motion. The trial court, on November 13, 1996, granted Martin’s motion and entered a summary judgment. Each of the plaintiffs filed separate notices of appeal to our supreme court; that court transferred the appeals to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the mov-ant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
A co-employee can be hable for injuries caused by willful conduct. § 25-5-11, Ala. Code 1975. Section 25-5-ll(c)(l) defines “willful conduct” as “[a] purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of ‘willful conduct.’ ”
To be held liable under § 25-5-11, a co-employee “ ‘must either have actual knowledge that an injury will occur from his actions or have substantial certainty that injury will occur.”’ Scott v. Goins, 677 So.2d 1154, 1156 (Ala.1996) (emphasis in original) (quoting Powell v. United States Fidelity & Guaranty Co., 646 So.2d 637, 639 (Ala.1994)). To defeat a properly supported motion for summary judgment, the plaintiffs must present evidence that shows either (1) that Martin had a reason to want to intentionally hurt either the plaintiff Rains and the husbands of the other three plaintiffs, or another employee, or (2) that a reasonable person in Martin’s position would have known that a particular result (the explosion) was substantially certain to follow from his actions. Reed v. Brunson, 527 So.2d 102, 120 (Ala.1988). “Evidence showing only knowledge and an appreciation of the risk of injury or death, short of a substantial certainty that injury or death would occur, is insufficient for the purpose of showing willful conduct under [§ 25-5-ll(c)(1) ].” Layne v. Carr, 631 So.2d 978, 982 (Ala.1994).
The plaintiffs do not argue that Martin acted with a purpose or intent to injure; they argue that Martin, as the 3M Corporation plant manager at the time of the explosion, knew or should have known of the dangerous condition of the tank and *390 that injury or death was “substantially certain to occur” as a result of that condition. They contend that a reasonable person in Martin’s position, after receiving Grelecki’s 1980 report and signing the purchase order indicating that the relief system on the tank was inadequate, would have known that injury or death was substantially certain to occur if the relief system on the tank was not replaced.[2]
Martin has been employed with 3M Corporation since 1964. He has a bachelor’s degree and a master’s degree in chemical engineering. While employed by 3M Corporation, he has held a number of positions, including central research engineer; central research engineering supervisor; central research engineering manager; commercial chemical process development manager; chemical division quality manager; and chemical operations technical manager.
Martin became the 3M Corporation plant manager in Decatur in September 1987. As plant manager, Martin was responsible for the overall function of the plant, including safety issues and compliance with OSHA regulations. Martin testified that had he known of the inadequacies of the relief system on the tank, it would have been his responsibility to shut the tank down and remedy the problem. He stated that that was, in fact, what he would have done if he had known of the inadequate relief system, but that before the explosion he had no knowledge of the inadequacies of the relief system.
The record, however, indicates that Martin did have knowledge of the inadequate relief system at least eight months before the explosion. As previously mentioned, Martin had signed a purchase order requesting funds to upgrade and increase the size of the relief system on the tank. He testified that the primary reason for upgrading the capabilities of the relief system was the safety concerns of the employees. The purchase order indicated that the relief system was inadequate and that a “large release of high pressure monomer would probably rupture the tank.” Martin testified that a rupture or explosion of the tank would “certainly” be hazardous to the employees working around the tank. Further, Martin testified that he was aware of the reactivity of CTFE with oxygen. Martin had knowledge of the inadequate relief system and the danger it presented, eight months before the explosion occurred — yet, the system was not upgraded.
Viewing the evidence in a light most favorable to the nonmovant and given Martin’s background and employment history with 3M Corporation, we find substantial evidence that creates a genuine issue of material fact as to whether Martin was substantially certain that an explosion and injury would occur if the relief system on the tank failed. Accordingly, the summary judgment is reversed as to this issue.
The plaintiffs next contend that Martin’s failure to replace or repair the relief system constitutes a removal of a safety device, within the meaning of § 25-5 — 11(c)(2). In Bailey v. Hogg, 547 So.2d 498 (Ala.1989), our supreme court held that the failure to install an available safety guard provided by the manufacturer of the machine constituted the “willful and intentional removal” of a safety guard, within the meaning of § 25-5-ll(c)(2). That section defines “willful conduct” to include: “[t]he willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal.” § 25 — 5—11(c)(2), Ala.Code 1975 (emphasis supplied). In Harris v. Gill, 585 So.2d 831, 835 (Ala.1991), our supreme court stated that an essential element of a prima facie case *391 under § 25 — 5—11 (c)(2) is that “[t]he safety guard or device must have been provided by the manufacturer of the machine.” The plaintiffs failed to make a prima facie case under § 25 — 5—11(c)(2), because neither the relief system nor the replacement ordered for the tank was “provided by the manufacturer.” The summary judgment is affirmed as to this issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. That appeal did not involve John J. Martin or the same issues contained in this appeal; the other two co-employee defendants named in the original complaint are no longer parties in the case.

. The record does not indicate that at the time of the explosion Martin knew of Dr. Grelecki’s 1980 report. Martin’s uncontra-dieted testimony is that he learned of the report only after the explosion had occurred.