The plaintiff, Gerard Pitts, appeals from a summary judgment for the defendants, James Beasley, Charles Stewart, Jack Stevenson, and Thomas McNider. Pitts's action sought to recover damages under Ala. Code 1975, § 25-5-11, for injuries Pitts says were caused by "willful conduct" of co-employees. We affirm.
A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present sufficient evidence creating such an issue of fact. In determining whether there is sufficient evidence to defeat a properly supported summary *Page 713 
judgment motion, this Court, like the trial court, reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant.Specialty Container Mfg., Inc. v. Rusken Packaging, Inc.,572 So.2d 403 (Ala. 1990).
Viewed in the light most favorable to the plaintiff, the evidence indicates the following: Pitts was injured in a methane gas explosion in the No. 5 underground coal mine operated by Jim Walter Resources, Inc. ("Jim Walter"). The explosion occurred at the mine face, where Pitts and several other miners were working. The mine had a ventilation system to facilitate the removal of dangerous methane gas and to provide the miners with an adequate supply of oxygen. That system consisted primarily of intake shafts and exhaust shafts. At the top of the exhaust shafts were large fans that drew air out of the mine. This process of drawing air out of the mine created a negative pressure in the mine and, in turn, allowed fresh air to be drawn into the mine through the intake shafts. Inside the mine itself, various structures, including "extendable line curtains," were constructed to direct the flow of air through the mine. Extendable line curtains consist of sheets of a plastic material that are nailed to wooden frames and attached with brackets to the roof of the mine. The extendable line curtain was designed to be positioned by the miners so as to improve the removal of the methane gas from the mine face where they were working.
Jim Walter had been cited a number of times by the Mine Safety and Health Administration ("MSHA") for various violations in connection with the ventilation of the No. 5 mine. Those citations, however, did not involve the area of the mine where the explosion that injured Pitts occurred. McNider testified by affidavit that "many of these [violations] were corrected on the spot by mine personnel or soon thereafter." At the time of the accident, Beasley was the manager of the No. 5 mine; Stewart was the general manager of safety and training for Jim Walter; Stevenson was the general manager of mine ventilation for Jim Walter; and McNider was deputy general manager of mine ventilation for Jim Walter. Pitts had never notified the defendants that they were violating any of Jim Walter's safety rules.
The MSHA investigated the explosion, but its investigation did not implicate any of the defendants as having caused the explosion. MSHA did state that the extendable line curtain located near the face of the mine where Pitts was working was located 12 feet from the face of the mine, instead of 10 feet, as required by regulation. MSHA noted that this was a "potential contributing factor." It was the responsibility of the miners who were working in the area where the explosion occurred to maintain the extendable line curtain in the proper position. None of the defendants was working in the mine at the time of the explosion, and none of them was responsible for positioning the extendable line curtain at the face of the mine where Pitts was working.
The pertinent portions of § 25-5-11 on which Pitts based his co-employee claims provide as follows:
 "(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer . . ., the employee shall have a cause of action against the person. . . .
 "(c) As used herein, 'willful conduct' means any of the following:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.'
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement *Page 714 
or modification of the machine which rendered the safety device unnecessary or ineffective.
". . . .
 "(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and intentional violation. The written notice to the violating employee shall state with specificity all of the following:
"a. The identity of the violating employee.
 "b. The specific written safety rule being violated and the manner of the violation.
 "c. That the violating employee has repeatedly and continually violated the specific written safety rule referred to in b. above with specific reference to previous times, dates, and circumstances.
 "d. That the violation places the notifying employee at risk of great injury or death.
 "A notice that does not contain all of the above elements shall not be valid notice for purposes of this section. An employee shall not be liable for the willful conduct if the injured employee himself or herself violated a safety rule, or otherwise contributed to his or her own injury. No employee shall be held liable under this section for the violation of any safety rule by any other employee or for failing to prevent any violation by any other employee."
Pitts contends that a jury could infer from the evidence 1) that the defendants had a "purpose or intent or design" to injure him or someone else in the No. 5 mine; that their actions proximately caused the explosion; and, therefore, that they are liable for his injuries under § 25-5-11(c)(1); 2) that the defendants willfully and intentionally removed a safety guard or a safety device that had been provided by Jim Walter, knowing that such removal would likely or probably cause injury or death; that their actions in this respect proximately caused the explosion; and, therefore, that they are liable for his injuries under § 25-5-11(c)(2); and, 3) that the defendants willfully and intentionally violated a specific written safety rule after receiving proper notice of the violation; that their actions proximately caused the explosion; and, therefore, that they are liable for his injuries under § 25-5-11(c)(4). The gravamen of all three of these claims or theories is Pitts's allegation that the top of the extendable line curtain that was located in the area of the explosion was sagging and that the sagging caused the flow of air across the mine face where he was working to be insufficient to prevent a dangerous buildup of methane gas. The defendants contend 1) that no evidence indicates that they had a purpose, intent, or design to injure any miner working in the No. 5 mine, and, therefore, that they are not liable under § 25-5-11(c)(1); 2) that a mine is not a "machine" and, therefore, that there is no evidence that any safety guard or safety device was improperly maintained or effectively removed from a machine, and thus that they had no liability under § 25-5-11(c)(2); and 3) that the notice requirements of § 25-5-11(c)(4) were not satisfied and thus Pitts had no cause of action under that subsection.
After examining the record and considering the briefs, we agree with the defendants that the summary judgment was proper. Section 25-5-11(c)(1) defines "willful conduct" as involving "[a] purpose or intent or design to injure another." An employee seeking to recover under this subsection carries a heavy burden. In Reed v. Brunson, 527 So.2d 102 (Ala. 1988), we described the evidence an employee must present in order to submit a case to a jury under § 25-5-11(c)(1). We required that the employee show either:
 "1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was *Page 715 
substantially certain to follow from his actions."
527 So.2d at 120. (Emphasis omitted.) Evidence showing only knowledge and an appreciation of the risk of injury or death, short of a substantial certainty that injury or death would occur, is insufficient for the purpose of showing willful conduct under subsection (c)(1). See Layne v. Carr,631 So.2d 978 (Ala. 1994). We find in the record no evidence indicating that any of the defendants had a reason for wanting to intentionally injure anyone in the No. 5 mine. Likewise, we find no evidence from which one could reasonably infer that any of the defendants would have known before the explosion occurred that the extendable line curtain was sagging or that the curtain was in such a condition as to make it substantially certain to cause a methane gas explosion. Underground mining is unquestionably an extremely dangerous business. As Pitts points out, the evidence indicates that the defendants were aware that the No. 5 mine was an unusually "gassy" mine and indicates that Jim Walter had been cited a number of times by the MSHA for certain violations in connection with the ventilation system in the mine. The evidence also indicates, however, that most (if not all) of the violations cited by the MSHA had been corrected before this explosion occurred. Although this evidence may show that the defendants knew of an inherent risk of injury or death associated with underground coal mining and that they appreciated that risk, it falls far short of demonstrating that any of the defendants knew with substantial certainty that the extendable line curtain near where Pitts was working would cause a methane gas explosion. The evidence presented would have been insufficient for a jury to infer that any of the defendants acted with a purpose or intent or design to injure Pitts or any of the other miners in the No. 5 mine.
Pitts's claim under § 25-5-11(c)(2) is based on his argument that the defendants failed to properly maintain the extendable line curtain in the area where the explosion occurred and that, under the rationale of Bailey v. Hogg, 547 So.2d 498 (Ala. 1989), their failure was tantamount to the removal of a safety guard or a safety device from a "machine" provided by Jim Walter.[1] Pitts argues in his brief as follows:
 "Mr. Pitts offers expert testimony that the ventilation mechanism composed of all these fans and structures at the [Jim Walter] mine is a 'machine.' Dr. Robert H. King explains that, among engineers and scientists, a machine is defined as 'an assemblage of bodies that transmit forces in a predetermined manner and to a desired end.' [C.R. 477 (affidavit of King; citing McGraw-Hill Dictionary of Scientific and Technical Terms, Academic Press Dictionary of Science and Technology, and Chambers Dictionary of Science and Technology).] Clearly, among people who design, build and operate machines, the word is broadly defined, and is not limited in meaning to the same thing as, for example, a single 'appliance.' Furthermore, nothing in the statute itself suggests that the term 'machine' is limited to a single device, like a press, motor or other appliance used in manufacturing. In this case, the manmade structures used in the [Jim Walter] mine clearly apply the force of fans to the mine, and transmit the force of the fans to specific locations in the mine, where the coal is actually being taken from the coal seam by the miners, according to the predetermined ventilation plan, and to the desired end of removing dangerous methane gas. It is, therefore, a machine.
 "Mr. Pitts shows abundant factual evidence from which a jury could conclude that the ventilation mechanism in the mine where he was injured is a machine, and that the extendable line curtain is a safety device attached to it. The trial court erred in holding, as a matter of law, that the extendable line curtain itself was not a machine or a portion of a machine within the contemplation of the Act."
(Emphasis original.)
We have carefully considered Pitts's argument, as well as Dr. King's expert opinion that a machine is generally understood by engineers and scientists to be "an assemblage *Page 716 
of bodies that transmit forces in a predetermined manner and to a desired end." However, this Court has held, as a matter of law, that "[a] mine is not a machine" within the meaning of § 25-5-11(c)(2). Mallisham v. Kiker, 630 So.2d 420 (Ala. 1993). Therefore, the extendable line curtain, which was attached to the roof of the mine, could not constitute a "safety guard or safety device" attached to a "machine," within the meaning of those terms as they are used in § 25-5-11(c)(2).
As to Pitts's § 25-5-11(c)(4) claim, we note that the undisputed evidence indicates that Pitts did not provide the notice required to create a cause of action under subsection (c)(4). Pitts argues that the MSHA citations were sufficient to satisfy the notice requirements of § 25-5-11(c)(4); however, this Court has specifically rejected a similar argument inCoates v. Guthrie, 707 So.2d 204 (Ala. 1997), decided this same day.
The summary judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, COOK, and SEE, JJ., concur.
Kennedy, J., dissents.
[1] See Lane v. Georgia Casualty Surety Co., 670 So.2d 889 (Ala. 1995).