HOUSTON, Justice.
Thomas Edward Guthrie, a coal miner employed by Jim Walter Resources, Inc. (“Jim Walter”), was killed in a mining accident when a portion of the roof in Jim Walter’s No. 7 underground mine collapsed. His widow, Betty Sue Guthrie, filed an action for damages in the Jefferson Circuit Court, under Ala.Code 1975, § 25-5-ll(e), naming as defendants, among others, the manager of the mine, Willis Coates; and Jim Walter’s *205 general manager of safety, Charles Stewart. We granted Coates and Stewart’s petition for permission to appeal the trial court’s interlocutory order denying their motion for a summary judgment. Rule 5, Ala.R.App.P. We reverse and remand.
The evidence, viewed in the light most favorable to the plaintiff, as our standard of review requires, Specialty Container Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403 (Ala.1990), indicates the following: Mr. Guthrie was crushed and killed on June 11, 1991, by a large rock that fell from the roof of the No. 5 section of the No. 3 entry to Jim Walter’s No. 7 mine. The Mine Safety and Health Administration (“MSHA”) issued a citation to Jim Walter within six months following the accident, noting a violation of Jim Walter’s roof control plan. MSHA could not say, however, whether that violation had actually caused the roof to collapse. In a report issued after its investigation of the accident, the MSHA concluded:
“The fatal accident occurred when an undetected slickenside rock measuring 12 feet long, 35 inches wide and up to 12 inches in thickness fell between permanent roof supports. The investigation revealed that there was no indication that the rock was loose and that at least eight of the victim’s co-workers had been in the area. The area of roof in the No. 5 section had bit scars from the continuous mining machine throughout causing this condition to be undetectable.”
The MSHA had cited Jim Walter a number of times in 1989, 1990, and 1991 for roof-control violations in various sections of the No. 7 mine. However, Mr. Guthrie had never provided the defendants with any notification that they had violated any of Jim Walter’s safety rules.
Alabama Code 1975, § 25-5-ll(b), provides, in pertinent part, as follows:
“If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer the employee shall have a cause of aetion against the person. ...”
Section 25-5-ll(c) defines “willful conduct” to include the following:
“(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the Violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and intentional violation. The written notice to the violating employee shall state with specificity all of the following:
“a. The identity of the violating employee:
“b. The specific written safety rule being violated and the manner of the violation.
“c. That the violating .employee has repeatedly and continually violated the specific written safety rule referred to in b. above with specific reference to previous times, dates, and circumstances.
“d. That the violation places the notifying employee at risk of great injury or death.
“A notice that does not contain all of the above elements shall not be valid notice for purposes of this section. An employee shall not be liable for the willful conduct if the injured employee himself or herself violated a safety rule, or otherwise contributed to his or her own injury. No employee shall be held liable under this section for the violation of any safety rule by any other employee or for failing to prevent any violation by any other employee.”
The plaintiff based one of her claims on § 25-5-ll(c)(4). The dispositive issue presented by this appeal is whether the safety citations the MSHA had issued to Jim Walter before the accident satisfied the notice requirements of Ala.Code 1975, § 25-5-11(c)(4).
Calling for an expansive interpretation of § 25 — 5—11(c)(4), the plaintiff, contends that the safety citations issued to Jim Walter by the MSHA before the accident constituted “substantial compliance” with the statutory notice requirements. She argues as follows:
*206 “An inspection pursuant to and subsequent citation given for a violation of the Federal Mine Safety and Health Act should be considered the proper written notice required by Alabama Code § 25-5-11(c)(4). The Federal Mine Safety and Health Amendments Act of 1977 (herein referred to as the Mine Safety Act) proposes ‘to promote safety and health in the mining industry, to prevent recurring disasters in the mining industry, and for other purposes ...’ (Legislative History— Senate Report No. 95-181, 91 Stat. 3401). This act outlines the procedure for inspection and the penalties for non-compliance. Additionally, the act provides a notification process through which an employee can make a complaint to the Mine Safety and Health Administration (MSHA) and provides protection against any discriminatory activities directed towards a complaining employee.
“In drafting this new legislation the Senate Committee set out- its reasons for the amendments. One of its concerns was that the ‘enforcement of safety and health laws should be the responsibility of agencies which are generally responsible for the needs of the workers.’ (91 Stat. 3408) This clearly states that Congress intended to create a system of inspections, and penalties in order to take the burden of making safety violation complaints away from the employee.
“The inspections are done by an MSHA inspector. The act provides that the mine operators and a representative of the miners may be present. (30 U.S.C. § 813) This participation by a miner’s representative is indicative of the very nature of these inspections. The inspections are done on behalf of the miner and for his protection. Obviously, Congress has chosen to create an agency which will act in the place of and for the benefit of the miners.
“One reason Congress has created an agency to do the job of reporting safety violations is because Congress is ‘aware.of the-need to protect miners against possible discrimihation because ' they file complaints.’ (91 Stat. 3429) In order to protect miners, the Mine Safety Health Act provides that a miner’s name is not listed on the complaint served on the mine operator. Also, there is [a] toll-free telephone number the miner may call to report any suspected safety violations. (91 Stat. 3429) These precautions indicate Congressional notice of the problems a miner might face when complaining to a mine operator about safety problems. It is unrealistic that the State of Alabama’s Legislature would have intended that a miner should risk his job in order to make the required notice when Congress has already set out a procedure for notification that provides the miner a risk-free opportunity to protect the safety of his job. Instead, it is more likely that the legislature would have intended that this notice be effectuated by a representative acting on behalf of the employee. It is obvious that this is the type of representa-five inspectors Congress created in the MSHA inspectors.”
The defendants contend that the notice requirements in § 25-5-ll(c)(4) are clear and specific and that any expansion of the scope of § 25-5-ll(c)(4) should be made by the Legislature, not by this Court. We agree.
The legislative intent regarding co-employee actions is set out in § 25-5-14:
“The legislature finds that actions filed on behalf of injured employees against ... employees of the same employer seeking to recover damages in excess of amounts received or receivable from the employer under the workers’ compensation statutes of this state and predicated upon claimed negligent or wanton conduct resulting in injuries arising out of and in the course of employment are contrary to the intent of the legislature in adopting a comprehensive workers’ compensation scheme and are producing a debilitating and adverse effect upon efforts to retain existing, and to attract new industry to this state. Specifically, the existence of such causes of action places this state at a serious disadvantage in comparison to the existing laws of other states with whom this state competes in seeking to attract and retain industrial operations which would provide *207 better job opportunities and increased employment for people- in this state. The existence of such causes of action, and the consequent litigation resulting therefrom, results in substantial costs and expenses to employers which, as a practical matter, must either procure additional liability insurance coverage for supervisory and management employees or fund the costs of defense, judgment or settlement from their own resources in order to retain competent and reliable personnel. The existence of such causes of action has a disruptive effect upon the relationship among employees and supervisory and management personnel.... The intent of the legislature is to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer ..., from civil liability for all causes of action except those based on willful conduct and such immunity is an essential aspect of the workers’ compensation scheme. The legislature hereby, expressly reaffirms its intent ... regarding the exclusivity of the rights and remedies of an injured employee, except as provided for herein [i.e., in Act No. 85-41, Ala. Acts 1984-85, the Act from which § 25-5-14 was drawn].”
In keeping with the expressed intent of the Legislature, this Court has recognized that § 25-5-11 cannot be construed so broadly as to allow a co-employee action in every situation where an employee is injured or killed on the job. The Legislature expressly limited the exceptions to the exclusivity of the workers’ compensation scheme. In Layne v. Carr, 631 So.2d 978, 983 (Ala.1994), this Court stated:
“Layne’s third argument is that the co-employee defendants’ actions constituted willful conduct as defined by § 25-5-11(c)(4). That section, however, states explicit requirements for a finding of willful conduct under that section. It requires that the injured employee have given written notice, which notice must conform to certain specifications, to the offending co-employees within the six months before the injured employee’s accident. Layne argues that notice of a violation of a written safety rule is sufficient to state a cause of action under this subsection. However, the statute requires more. Subsection (c)(4) also requires that the notice come from the injured employee and that the notice contain certain items. In keeping with the legislative intent that actions against co-employees be allowed as a limited exception to the exclusivity of the workers’ compensation scheme, we hold that, for an employee to bring an action under subsection (c)(4), the required notice must substantially conform to the requirements of that subsection. Layne does not argue that the notice conforms to the requirements, nor does he argue that he was the one giving the co-employees notice. Therefore, we hold that the trial judge correctly held that Layne’s action could not proceed under § 25-5-ll(c)(4).”
The undisputed evidence indicates that Mr. Guthrie did not provide the notice required by § 25-5-ll(e)(4). The plaintiff concedes this. We hold, therefore, that the defendants are entitled to a summary judgment on the plaintiff’s § 25-5-ll(c)(4) claim. In so holding; we note the plaintiff’s policy' argument that, in the mining context, the MSHA’s safety citations should provide sufficient notice to süpport a cause of action for damages against a co-employee. In this respeet, this argument is similar to the one made in Mallisham v. Kiker, 630 So.2d 420 (Ala.1993), where the plaintiff in a co-employeé action under § 25-5-ll(c)(2) argued that mining safety is not as concerned with machines as manufacturing safety is, and, therefore, that § 25-5-ll(c)(2) should be extended, in the mining context, to include devices pertaining to the safety of the mine itself. In rejecting the plaintiff’s arguments in Mallisham, we stated:
“The legislature has retained a limited right of action against a co-employee under § 25 — 5—11(c)(2) for the removal of a manufacturer’s safety device from a machine, not the removal or omission of any safety device from any workplace environment. Such a change in the law must be left to the legislature.”
630 So.2d at 423-24. (Emphasis original.) Likewise, the changes the plaintiff urges us to make today by way of judicial interpreta *208 tion must, necessarily, be made by the Legislature.
We further note that the plaintiffs reliance on Morgan v. Northeast Alabama Regional Medical Center, 624 So.2d 560 (Ala.1993), is misplaced. In Morgan, the plaintiff sought to recover damages under Ala. Code 1975, § 25-5-11.1, basing his action on allegations that his employment had been wrongfully terminated because he had complained about a violation of a' safety rule. Section 25-5-11.1 provides in part: “No employee shall be terminated by an employer ... solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11.” The issue concerned whether the plaintiff had given sufficient notice to invoke the protection of § 25-5-11.1. A majority of this Court held that the plaintiffs complaint to the Occupational Safety and Health Administration (which was submitted to the plaintiffs employer), together with the evidence of repeated oral complaints by the plaintiff, was sufficient evidence to satisfy the requirements of § .25-5-11.1.[1] However, the majority in Morgan was careful to limit its holding to § 25-5-11.1, leaving intact the specific requirements of § 25-5-ll(c)(4) in co-employee actions:
“This heavy burden [imposed by the requirements of § 25-5-ll(e)(4) ] on a plaintiff who seeks to establish that his co-employee has willfully injured him is consistent with the legislative purposes in enacting the statute that amended § 25-5-11(c) to its present form. See Reed v. Brunson, 527 So.2d 102 (Ala.1988). Incorporation of all of these requirements into § 25-5-11.1 would not be .consistent, however, with the remedial purposes of that provision. Section 25-5-11.1 was enacted to offset the harsh effects of the employment-at-will doctrine. See [Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364 (Ala.1988)]. There are legitimate reasons for imposing a strict notice-filing requirement before a co-employee can be said to be engaging in ‘willful conduct’ that injures the complaining employee, but those reasons do not apply to the policy of prohibiting employers from firing employees for complaining about safety violations. Thus, just as this court in [McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991),] construed ‘action’ to mean any workers’ compensation claim, not just an action at law, we construe the § 25-5-11.1 requirement of notice of a safety violation as not incorporating all the strict requirements of § 25-5-ll(c)(4).”
624 So.2d at 562.
For the foregoing reasons, the trial court’s order denying Coates and Stewart’s motion for a summary judgment on the plaintiffs § 25-5-ll(c)(4) claim is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, and SEE, JJ., concur.
SHORES, KENNEDY, and BUTTS, JJ., dissent.

. The author of this opinion dissented in Morgan.