HARWOOD, Justice.
Brenda Wadsworth appeals from a summary judgment in favor of Linda Jewell and Jackie Moore in Wadsworth’s “co-employee” action against Jewell and Moore in the Jefferson Circuit Court. We affirm.
Wadsworth sued Jewell and Moore alleging that on March 1, 2001, Wadsworth injured her hand while operating a computer keyboard for-her employer, because, she said, Moore and Jewell “intentionally refused to provide the ergonomic keyboard prescribed by her treating physician, therefore in effect removing] a safety guard device thus causing injury to [Wads-worth].”
The undisputed facts are as follows. On March 1, 2001, Wadsworth, a longtime employee of AT & T Communications, Inc., was attending a training session conducted by AT & T to acquaint her with new techniques available in her work as a teleconference specialist. According to Wads-worth’s deposition, that job required her to “set up business calls or hearings for attorneys,” and involved her “[slitting in a cubicle, at a computer constantly answering the telephone calls that came in constantly one right after another,” with associated “constant typing.”
Wadsworth testified in deposition that she had a history of' carpal-tunnel problems following two separate non-work-related automobile accidents, and that she had undergone carpal-tunnel-release surgeries on both of her wrists. She said that when she again began having pain and swelling in her wrist in 2000, she obtained a letter from her physician on May 16, 2000, recommending that she be “evaluated for the work-friendly keyboard.” AT & T provided Wadsworth with an ergonomic keyboard to use at her workstation. The training session she attended was conducted at a location away from her customary workstation, and the computer available for her use during the training was equipped with a standard, not an ergonomic, keyboard. Wadsworth said that she asked the instructor to replace the standard keyboard with an ergonomic one. The instructor sent Wadsworth to Moore’s office, which was located “just upstairs” from where the training session was being conducted. Moore, who held the position of training manager for AT & T, accompanied Wadsworth to see Jewell, the manager of the training center. According to Wadsworth, she and Jewell were personal friends, and Wadsworth mentioned to Jewell and Moore that she had experienced wrist pain following a similar training class conducted two weeks earlier. Jewell and Moore told Wadsworth that they were sorry about her prior experience but that “the technicians were busy putting in new computers in another section of the building and that they didn’t want to pull them off that job to come and carry my computers.” They recommended that she resume the training session, but they told her “do enough typing to keep up with everything so you will know the procedures, but you don’t have to do all the typing that it requires. If it starts hurting rest a minute and then start back.”
The training session was scheduled to last four or five hours with a lunch break *666 and two rest breaks, so only approximately two and one-half hours of the session involved typing, and some of that time, in turn, involved only the use of a computer “mouse” in connection with “drop-down menus.” Jewell and Moore promised Wadsworth that there would be an ergonomic keyboard in the training lab at all times in the future. Wadsworth’s union representative was also participating in the training session; she offered to let Wads-worth look over her shoulder so that Wadsworth could participate in the training without having to type, but Wadsworth declined because she believed that she could not learn the techniques being taught without actually doing the key strokes herself. After the training session ended, Wadsworth returned to her job for an hour or so. Jewell stopped by Wads-worth’s work area to inquire if she was “okay,” and Wadsworth told her that she was fine; Wadsworth was actually in pain but “didn’t want to be bothered.”
When Wadsworth was asked in deposition whether she was contending that by not supplying an ergonomic keyboard either Moore or Jewell intended to injure her, she expressed her opinion that neither had intentionally tried to injure her. She indicated in deposition that she believed Jewell was “trying to show her authority” and “didn’t think it through,” and she did not think either Moore or Jewell “real-iz[ed] how it [felt] to use one of these keyboards when you have a problem.... I think they did not realize the amount of pain.”
Section 25 — 5—11(b), Ala.Code 1975, a part of Alabama’s Workers’ Compensation Act, provides, in pertinent part, that “[i]f personal injury ... to any employee results from the willful conduct, as defined in subsection (c) herein, of any ... employee of the same employer ..., the employee shall have a cause of action against the person....” Subsection (c), in turn, provides:
“(c) As used herein, ‘willful conduct’ means any of the following:
“(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of ‘willful conduct.’
“(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.
“(3) The intoxication of another employee of the employer if the conduct of that employee has wrongfully and proximately caused injury or death to the plaintiff or plaintiffs decedent, but no employee shall be guilty of willful conduct on account of the intoxication of another employee or another person.
“(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and in *667 tentional violation. The written notice to the violating employee shall state with specificity all of the following:
“a. The identity of the violating employee.
“b. The specific written safety rule being violated and the manner of the violation.
“c. That the violating employee has repeatedly and continually violated the specific written safety rule referred to in b. above with specific reference to previous times, dates, and circumstances.
“d. That the violation places the notifying employee at risk of great injury or death.
“A notice that does not contain all of the above elements shall not be valid notice for purposes of this section. An employee shall not be liable for the willful conduct if the injured employee himself or herself violated a safety rule, or otherwise contributed to his or her own injury. No employee shall be held liable under this section for the violation of any safety rule by any other employee or for failing to prevent any violation by any other employee.”
Although Wadsworth made no reference in her complaint to § 25-5-11(c), she argued in her opposition to the summary-judgment motions of Jewell and Moore that the issues presented by her case were whether an ergonomic keyboard was á safety device and whether Jewell and Moore had “engaged in willful conduct as defined in § 25-5-ll(c), specifically by the willful and intentional removal of a safety device with knowledge that injury or death would likely or probably result from removal.”
In entering the summary judgment, the trial judge concluded that Wadsworth could not sustain a claim under § 25-5-11(c)(1) because she did not contend, and the evidence did not support an inference, that either Moore or Jewell had consciously pursued a course of conduct “with a design, intent, and purpose of inflicting injury.” Wadsworth disputes that finding in her brief to this Court, arguing that when she testified on deposition that she did not believe that the defendants had any intent to hurt her, she was using “everyday, colloquial English as opposed to the use of ‘intent’ in this particular legal context.”
In Ex parte Newton, 895 So.2d 851, 854 (Ala.2004), another action by an injured employee against co-employees pursuant to § 25-5-ll(c)(l) and (c)(2), we explained that the standard applicable to our review of a summary judgment was well established:
“ ‘We review a summary judgment by the same standard the trial court uses when it rules on a motion for summary judgment. Long v. Bankers Life & Cas. Co., 294 Ala. 67, 70, 811 So.2d 328, 329 (1975). A trial court should grant a motion for summary, judgment where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Pitts v. Beasley, 706 So.2d 711, 712 (Ala.1997). If the movant makes a prima facie showing that there is no genuine' issue of material fact, then the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989); Bean v. Craig, 557 So.2d 1249, 1252 (Ala.1990).’
“Ex parte Martin, 733 So.2d 392, 394 (Ala.1999). Substantial evidence is ‘evidence of such weight-and quality that fair-minded persons in the exercise of *668 impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Moore and Jewell made a prima facie showing that there was no genuine issue of material fact concerning their intent to injure Wadsworth, referring to Wadsworth’s own deposition testimony on the issue. Moore and Jewell also each filed an affidavit stating that at no time did either have any intent to injure Wads-worth. Wadsworth produced no substantial evidence in opposition; Moore and Jewell were therefore entitled to a judgment in their favor as a matter of law as to Wadsworth’s claim under subsection (c)(1).
“Evidence showing only a knowledge or an appreciation of a risk of injury will not entitle a plaintiff to a jury determination of whether the co-employee acted with a purpose, intent, or design to injure another. A co-employee must either have actual knowledge that an injury will occur from his actions or have substantial certainty that injury will occur.”
Bean v. Craig, 557 So.2d 1249, 1252 (Ala.1990) (citations omitted).
“Although the evidence may suggest that these defendants appreciated the risk that a pole would roll off the trailer and cause injury, the record does not support a finding that they had ‘actual knowledge’ or knew to a ‘substantial certainty’ that injury would occur.”
Nicholson v. Alabama Trailer Co., 791 So.2d 926, 931 (Ala.2000).
In her brief to this Court, Wads-worth cites only, and cites only once, § 25-5 — 11(c), without differentiating between subsections (1) and (2). Although, as noted, she argues that her deposition testimony to the effect that she did not believe the defendants had any intent to injure her should not be controlling, she seemingly focuses on the “willful conduct” definition in subsection (c)(2). Specifically, she states that “[t]his case revolves around issues of intentional removal of a safety device ... the single keypoint of contention between the parties in the case at bar, is whether an ergonomic keyboard is a safety device of the kind described in § 25-5-ll(c)[ (2) ].” Wadsworth attached to her opposition to the summary-judgment motions a copy of a letter to her attorney by Russ Gurley, a vocational expert. Gurley wrote that “[f]rom a functional vocational standpoint an ergonomic keyboard would be considered a safety device for Ms. Wadsworth since it was recommended by her physician as a device for her to use in order to avoid further harm to her hands.” Moore and Jewell filed a response to Wadsworth’s opposition in which they pointed out, among other things, that the Gurley letter was not evidence that the trial court could consider under Rule 56, Ala. R. Civ. P., because “it is not by affidavit or cited in discovery materials and is not properly before the Court.” We agree, and aside from the fact that Gurley’s opinion was possibly irrelevant, the trial judge was entitled to disregard it in reaching her conclusions. In her summary-judgment order, the trial judge concluded that “[t]he provision of an ergonomic keyboard is an accommodation for the plaintiffs carpal tunnel syndrome rather than a safety device to prevent injury or death such as is contemplated by [§ 25-5-11(c)(1) ].” Moreover, and consistent with the well-established rale that we will affirm a summary judgment if there is any ground upon which the judgment could have been based, McCloud v. City of Irondale, 622 So.2d 1272, 1773 (Ala.1993), we deem it fatal to Wadsworth’s claim that the ergonomic keyboard clearly was not a “safety guard or safety device provided by *669 the manufacturer of the machine.” To succeed on a claim brought under § 25-5-11(c)(2):
“1. The safety guard or device must have been provided by the manufacturer of the machine;
“2. The safety guard or device must have been removed from the machine;
“3. The removal of the safety guard or device must have occurred with knowledge that injury would probably or likely result from that removal; and
“4. The removal of the safety guard or device must not have been part of a modification or an improvement that rendered the safety guard or device un-neecessary or ineffective.”
Harris v. Gill, 585 So.2d 831, 835 (Ala.1991).
It is undisputed that the ergonomic keyboard was not provided by the manufacturer of the computer at Wadsworth’s workstation; rather, it was obtained specially for Wadsworth by AT & T in response to her doctor’s letter. The computer at which Wadsworth was to work during the training session was a totally different computer, one that was equipped with a standard keyboard. Thus, independent of the issue whether an ergonomic keyboard can be considered a safety device, the ergonomic keyboard in this case was never removed from Wadsworth’s computer, and no ergonomic keyboard was ever provided by the manufacturer of the computer she used during the training session as a component of that equipment. We are mindful of the fact that in Harris, supra, we held that the term “manufacturer,” as used in § 25-5-ll(c)(2), can include “not only the original manufacturer ..., but also a subsequent entity that substantially modifies or materially alters the [machine] through the use of different components and/or methods of assembly.” 585 So.2d at 836. In Harris, the plaintiffs employer had purchased from another company a used and inoperable punch press and had reworked the press to make it operational and to outfit it for processing metal collars. In effect, the company had reconstructed the “basically unusable” press into a working machine. 585 So.2d at 833. With respect to the computer assigned to Wadsworth during the training session, assuming that the manufacturer of the computer had provided the standard keyboard that was attached to it, there is no basis for the argument that such a nonergonomic keyboard could represent a safety device. A safety device is something that is provided principally, but not exclusively, to protect the employee and to prevent him or her from being injured while engaged in the performance of the service required by the employer; “it is not something that is a component part of the machine whose principal purpose is to facilitate or expedite the work.” Moore v. Reeves, 589 So.2d 173, 177 (Ala.1991). See also Hallmark v. Duke, 624 So.2d 1058 (Ala.1993).
In the final analysis, it is inescapable that Wadsworth has failed to prove that a safety device provided by the manufacturer with respect to the computer-provided for her use during the training session was removed; even if an ergonomic keyboard could be deemed a safety device in another setting, which we have no occasion presently to decide, there was no ergonomic keyboard provided by the manufacturer for, and thus no such keyboard was removed from, the computer at which Wads-worth worked during the training session.
Accordingly, because there is no genuine issue of material fact and because Moore and Jewell are entitled to a judgment as a matter of law with respect to the claims asserted against them under § 25-5- *670 11(c)(1) and (c)(2), we affirm the summary judgment entered in their favor.
AFFIRMED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.