Jerry L. Lane appeals from the summary judgment entered in favor of his employer, W.T. Vick Lumber Company, Inc. (hereinafter "Vick Lumber"), and several supervisory co-workers on claims of negligence arising from an on-the-job injury he received.
Lane sued Vick Lumber; its foreman, Jewell Able; Dean Wellborn, a supervisor; and Alfred T. Vick, general manager of Vick Lumber, alleging that he had been injured by a chip from a chisel he was holding for Able to hit with a hammer and that the defendants had caused his injury. Lane also named as a defendant Vick Lumber's workers' compensation insurance carrier, Georgia Casualty and Surety Company. Lane dismissed Vick Lumber, and his claims against Able were later stayed when Able filed a Chapter 7 bankruptcy petition. The trial court granted the subsequent summary judgment motions filed by Georgia Casualty, Alfred Vick, and Dean Wellborn. Lane appeals from the summary judgments.
 I.
In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before it created a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
On February 6, 1989, Lane was a work release prisoner employed as a laborer for Vick Lumber. Lane was assigned to assist Able in the Vick Lumber maintenance shop. The two were working to remove a gear from a motor, and Able asked Lane to hold a chisel against the motor. As Lane held the chisel in place, Able hit the chisel with a hammer; a chip of metal from the chisel flew into Lane's left eye, injuring him.
Lane testified in deposition that safety glasses were available at Vick Lumber and *Page 891 
that he had worn a pair of those glasses on prior occasions while working on a saw. He further testified that, on the day of the accident, he had worked outside before going inside to help Able remove the motor in the maintenance room. Lane stated that, while outside, he was concerned that the sawdust that was blowing in the wind there would irritate his eyes and that he therefore asked Wellborn for a pair of safety glasses. He stated that Wellborn told him the safety glasses were not necessary and refused to provide them for him.
Lane testified that he did not ask for a pair of safety glasses while inside with Able; then he equivocated and changed his testimony to state that he had asked Able for safety glasses before holding the chisel for him. Lane later admitted that he did not discuss safety glasses with Vick until after the accident. Lane described the chisel as being 14 inches long and constructed from iron or steel, and he stated that the hammer that struck it was approximately two inches across.
 II.
Although the law does not favor actions against co-employees, Ala. Code 1975, § 25-5-11, provides the following exception to this principle:
 "(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer [or the employer's workers' compensation insurance carrier] . . ., the employee shall have a cause of action against the person [or the] workers' compensation carrier. . . .
 "(c) As used herein, 'willful conduct' means any of the following:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of 'willful conduct.'
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal. . . ."
(Emphasis added.)
Lane first argues that his supervisory co-employees' failure to provide him with safety glasses was "willful conduct" as defined by § 25-5-11(c)(1). A plaintiff seeking to recover under this subsection carries a heavy burden; the plaintiff must show either the reason the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or (2) that a reasonable person in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his or her actions. Reed v. Brunson, 527 So.2d 102 (Ala. 1988). Evidence showing only a co-employee's knowledge and appreciation of the risk of injury or death, short of a substantial certainty that injury or death would occur, is insufficient for the purpose of showing "willful conduct" under subsection (c)(1). Reed v.Brunson.
There was evidence that Wellborn intentionally failed to provide Lane with safety glasses while Lane was outside in the lumberyard, where sawdust was blowing through the air; however, this evidence is irrelevant, because Lane's injury did not arise from the blowing sawdust. There is no evidence to suggest that Vick, Able, or Wellborn had any intent to injure Lane by failing to provide him with safety glasses before he held the chisel for Able while inside the building. Lane never asked Vick for the glasses at any time and allegedly asked Wellborn for them only while he was outside preforming a separate task.
Likewise, nothing in the record suggests that Able appreciated the risk that a chisel, which is specially forged to withstand impact, would chip when hit by a hammer and cause injury to Lane. There is no evidence that the chisel was old or defective, that the metal head of the hammer was especially hard, or that the task required an unusually powerful blow from the hammer. Vick and Wellborn were not even present during the task to observe whether any of these conditions existed. *Page 892 
We, therefore, conclude that the summary judgments were proper as to this issue.
Lane next argues that the defendants' failure to provide him with safety glasses constitutes "willful conduct" under §25-5-11(c)(2), which defines "willful conduct" to include the "willful and intentional removal from a machine of a safety guard or safety device." Although the safety glasses were not a safety device attached to a machine, Lane argues that the failure to provide the glasses was willful conduct that is the functional equivalent of removing a safety device from a machine.
This Court has held that the intentional failure to maintain or repair a safety device upon a machine is the equivalent of intentionally removing a safety device designed for a machine,Bailey v. Hogg, 547 So.2d 498 (Ala. 1989), and that intentionally bypassing a safety device designed for a machine is also tantamount to removing the device, Harris v. Gill,585 So.2d 831 (Ala. 1991). This Court has, however, consistently rejected attempts to bring actions against co-employees outside of the limited context of safety devices manufactured for machines. See Layne v. Carr, 631 So.2d 978 (Ala. 1994) (failure to maintain pumps to drain water from mines held not the equivalent of the failure to repair a safety device on a machine); Blackwood v. Davis, 613 So.2d 886 (Ala. 1993) (failure to provide adequate lighting was not the removal of a safety device from a machine); Mallisham v. Kiker,630 So.2d 420 (Ala. 1993) (co-employee's failure to place supporting beams at required intervals in a mine shaft held not to be the removal of a safety device from a machine).
We reiterate today that § 25-5-11(c)(2) cannot be construed to allow a co-employee action in every situation where an employee is injured on the job and that any change in the limited right of action provided for in § 25-5-11(c)(2) must be left to the legislature. Layne v. Carr; Mallisham v. Kiker.
While the safety glasses that Lane says his co-employees failed to provide for him might be construed to be a safety device, they were not part of a machine. The summary judgments were, therefore, proper as to this issue.
 III.
Lane next argues that Georgia Casualty, as Vick Lumber's workers' compensation carrier, had a duty to inspect the premises of Vick Lumber to ensure compliance with OSHA regulations and he argues that it breached this duty. This Court has established that a workers' compensation carrier may be held liable for negligent inspection where it voluntarily undertakes to inspect an insured's premises for safety and to provide safety inspections. Fireman's Fund Am. Ins. Co. v.Coleman, 394 So.2d 334 (Ala. 1980). However, a workers' compensation carrier may be liable under § 25-5-11 only for willful conduct, not mere negligence, in such an inspection.Kruszewski v. Liberty Mutual Ins. Co., 653 So.2d 935 (Ala. 1995). Because Lane presented no evidence that Georgia Casualty ever assumed any duty to inspect the premises or the tools used by Vick Lumber, the summary judgment for Georgia Casualty was proper.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, and INGRAM, JJ., concur.