The plaintiff Alice Cumbie appeals a summary judgment entered in favor of the defendants Mark Beisecker, Lee Sims, and Lynn Cox in a personal-injury action filed pursuant to Ala. Code 1975, §25-5-11 (part of the Alabama Workers' Compensation Act). We affirm.
On August 13, 1994, Cumbie was working for LA Contracting Company, Inc. ("LA"), on a bridge-construction project in Prichard. Beisecker, Sims, and Cox also worked for LA, in supervisory positions (hereinafter they will be collectively referred to as "the supervisory co-employees"). LA uses a machine known as an electric screed, which is manufactured by *Page 1100 
Shugart Manufacturing Company, Inc. It is approximately 2 feet wide and 100 feet long and consists of two -inch drills and three sheathed cables wound on a large drum/spool. According to the testimony, the screed "zigzags" back and forth across freshly poured concrete, producing a smooth finish. After the screed finishes zigzagging across the concrete, a large crane lifts the screed into the air and returns it to its original position so that the process can be repeated. Before the process is repeated, the screed must be reset by manually releasing the tension on the cables. In order to manually release the tension, the employees of LA used an emergency crank handle welded onto the drum of the screed.
Cumbie testified that on the day of the accident she and another co-employee, "Tex" French, were in the process of resetting the screed and that French instructed her to hold the crank handle while he let the tension off the cable. Cumbie testified that it was necessary to hold the crank handle in order to keep the cable from "bird nesting" on the drum. Cumbie testified that while she was attempting to reach for the crank handle with her right hand, the handle spun out of control, striking her under the right cheekbone and knocking her unconscious. Cumbie testified that none of the supervisory co-employees was present when the accident occurred and that she had no reason to believe that they intended to injure her. In fact, she stated that her fellow employees had always made a concerted effort to protect her from all harm. Cumbie stated that before the accident the crank handle had been welded onto the screed, but that she did not know who had welded it. Cumbie stated that other employees at LA had been injured by the crank handle and that employees were routinely cautioned to be careful around the crank handle. Cumbie filed for, and received, workers' compensation benefits.
Cumbie sued the three supervisory employees, pursuant to §25-5-11(c)(1) and (c)(2), alleging that intentional and willful conduct on their part had proximately caused her injuries. The trial court entered a summary judgment in favor of the supervisory co-employees, and Cumbie appealed.[1]
When reviewing the disposition of a motion for a summary judgment, this Court uses the same standard of review the trial court uses "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Blackwood v. Davis, 613 So.2d 886 (Ala. 1993).
We initially note that while Cumbie asserted claims against the supervisory co-employees under § 25-5-11(c)(1) and *Page 1101 
(c)(2), she failed to argue § 25-5-11(c)(1) before the trial court and she does not argue that provision in her brief on appeal. We therefore pretermit discussion of § 25-5-11(c)(1), which allows a cause of action against co-employees for the conscious pursuit of a course of conduct with a purpose, design, or intent of inflicting injury. The trial court properly entered the summary judgment in favor of the supervisory co-employees insofar as it related to Cumbie's claim under § 25-5-11(c)(1). Ex parte Riley,464 So.2d 92 (Ala. 1985).
The only issue for our review is whether the trial court erred in entering a summary judgment in favor of the supervisory co-employees on Cumbie's claim based on § 25-5-11(c)(2). The Court concluded that Cumbie had failed to present substantial evidence to support that claim. Section 25-5-11(c)(2) reads:
 "(c) As used herein, `willful conduct' means any of the following:
". . . .
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
Cumbie argues that the act of permanently attaching the crank handle onto the screed constitutes the "constructive" removal of a safety device from a machine. The supervisory co-employees, on the other hand, contend that the crank handle is not a "safety device" within the meaning of that term as it is used in §25-5-11(c)(2), because, they say, the crank handle was an integral or component part of the screed. Lynn Cox, the project superintendent for LA, testified by affidavit:
 "4. . . . A crank handle is attached to the spool/drum which is used to manually release tension on the cables when necessary. The crank handle also permits manual operation of the electrically powered screed in cases of power failure.
 "5. The screed machine is used after concrete is poured onto the bridge and after the concrete is manually smoothed as close to the appropriate grade as possible. At that point, a crane lifts the screed to a position on one side of the bridge. Cables attached to each end of the screed are also attached to the form work on each side of that portion of the bridge containing the freshly poured concrete. An electric motor on the screed turns the spool/drum which, in conjunction with the attached cables, causes the screed to `zigzag' back and forth across the freshly poured concrete. Accordingly, the screed smooths out and finishes the concrete.
 "6. The above mentioned process is repeated throughout the bridge construction process. After the screed `zigzags' across the concrete, the crane lifts the screed to begin the process all over again. Each time the screed is reset, the tension on the cable must be loosened to prevent the cable from `bird nesting' on the spool/drum. The crank handle must be in place and used to loosen said cable tension during this resetting process."
(Emphasis added.) Cumbie also testified that the crank handle was necessary in order to relieve the tension from the cable:
 "Q. When does the crank handle have to be attached to the screed?
 "A. When you let the tension out on it to keep it from bird-nesting so you can roll the tension out slowly setting it back. *Page 1102 
 "Q. And if the crank handle is not on the screed when you let the tension out, then the cable is going to bird-nest?
"A. Right. Yes, ma'am.
 "Q. So you need the crank handle on the screed when you let the tension out; correct?
"A. Yes, ma'am."
Despite Cumbie's admitted use of the crank handle, she contends that the permanent attachment of the crank handle to prevent its removal created a serious safety hazard that, she says, proximately caused her injuries. Cumbie offered the testimony of Frank Shugart, the vice president of Shugart Manufacturing Company. He testified that when Cumbie was injured the crank handle was not being used as it was intended or designed. Shugart testified that the crank handle was designed to be attached by two bolts and used only in the event of a loss of electricity or a cable-drum failure. Shugart testified that the handle is stored in a designated compartment and should not be attached during normal operation because, he says, attaching it could create a hazardous condition. Specifically, when the crank handle is attached, he said, the tension on the cable can cause the handle to spin out of control. According to Shugart, there was another handle on the screed specifically designed to release the cable tension. However, even when the crank handle is temporarily attached to the screed during a loss of electricity or during a cable-drum failure, as the manufacturer apparently contemplated, we conclude that it still poses the same risk of danger to the employee, because there is no safety guard or safety device to shield the employee from the handle and the danger that it apparently imposes.
Allegations regarding the misuse of the crank handle are not material unless they implicate a violation of § 25-5-11(c)(2). Therefore, we must address the issue whether the permanent attachment of the crank handle, which, after its original manufacture, could be removed from the screed, equates with the "removal from [the screed] of a safety guard or safety device," within the meaning of § 25-5-11(c)(2).
The facts of this case are clearly unlike the facts of the typical case involving the removal of a safety guard and/or device from a machine in a factory setting. Cumbie correctly points that this Court has, on limited occasions, liberally interpreted the concept of "removal" within the context of § 25-5-11(c)(2). In Bailey v. Hogg, 547 So.2d 498, 500 (Ala. 1989), this Court held that the "failure to install" a safety device provided by the manufacturer equated to the intentional and willful "removal" of a safety device. Likewise, in Harris v. Gill, 585 So.2d 831, 837
(Ala. 1991), this Court held that the act of "bypassing" an original safety device by installing an alternative safety device equated with the intentional and willful "removal" of a safety device. Finally, in Moore v. Reeves, 589 So.2d 173, 178-79 (Ala. 1991), we held that the "failure to maintain and/or repair a safety guard" equated with the intentional and willful "removal" of a safety guard.
The principal distinction between this case and the cases cited above, however, is that those cases cited above involved existing safety devices — failing to install a safety device provided by the manufacturer, bypassing an original safety device provided by the manufacturer, and failing to maintain or repair an existing safety device. In the instant case, it is undisputed that the screed was not manufactured with any safety devices or safety guards. Moreover, Cumbie fails to cite any caselaw in support of her proposition that the original removable crank handle constitutes a safety device and that the permanent attachment of it constitutes a removal. Instead, she urges this Court to broaden our construction of the phrase "removal from a machine of a safety guard or safety device" to embrace the intangible concept of the correct or safe mode of use of an integral part of a machine. *Page 1103 
In Moore, 589 So.2d at 177, this Court specifically defined the terms "safety device" and "safety guard" as those terms are used within the context of § 25-5-11(c)(2):
 "[T]he terms `safety device' and `safety guard' mean an invention or contrivance intended to protect against injury, damage, or loss that insures or gives security that an accident will be prevented. Therefore, for purposes of construing these terms within § 25-5-11(c)(2), we hold that a `safety device' or `safety guard' is that which is provided, principally, but not exclusively, as protection to an employee, which provides some shield between the employee and danger so as to prevent the employee from incurring injury while he is engaged in the performance of the service required of him by the employer: it is not something that is a component part of the machine whose principal purpose is to facilitate or expedite the work."
The supervisory employees condoned the manner in which the crank handle was being used, and they insist that the handle was a component or integral part of the screed. After reviewing the evidence in this case, we conclude that the crank handle is merely a "component part of the machine whose principal purpose is to facilitate or expedite the work" of finishing concrete. Moore, 589 So.2d at 177. It is not a "safety device" as contemplated by § 25-5-11(c)(2). Specifically, the status of the crank handle is not changed merely because, according to the manufacturer, it was being used in an improper manner. We acknowledge that while the act of permanently attaching the crank handle onto the screed appears to increase the risk of injury, that action is not evidence of a "willful and intentional removal . . . of a safety guard or safety device" within the meaning of § 25-5-11(c)(2).
"[E]ver mindful of . . . the well-established law that the "Alabama [Workers'] Compensation Act is to be construed liberally to effect its beneficent purposes, [we resolve] all reasonable doubts in favor of the claimant." Moore, 589 So.2d at 177. By the same token, however, Alabama law does not favor actions against co-employees, and this Court has consistently refused to allow recovery against co-employees outside the limited context of safety devices manufactured for machines. See Williams v. Price,564 So.2d 408 (Ala. 1990) (failure to give instructions regarding safety procedures not equivalent to the removal of a safety device); Hallmark v. Duke, 624 So.2d 1058 (Ala. 1993) (splitter box, transfer lines, and ninety-degree elbow joint of clarifier system not equivalent to safety guards or devices); Layne v. Carr, 631 So.2d 978 (Ala. 1994) (failure to maintain pumps to drain water from mines not the equivalent of failure to repair safety device on a machine); Blackwood, 613 So.2d 886 (Ala. 1993) (failure to provide adequate lighting not the equivalent of removal of safety device from a machine); Mallisham v. Kiker,630 So.2d 420 (Ala. 1993) (failure to place support beams in a mine shaft not equivalent to removal of safety device from machine); Namislo v. Akzo Chemical Co., 671 So.2d 1380 (Ala. 1995) (scrubber system and exhaust fans in cell house where chlorine gas was produced were not equivalent to removal of safety device from machine); Thermal Components, Inc. v. Golden, 716 So.2d 1166
(Ala. 1998) (failure to install better ventilation system not equivalent to removal of safety device from machine, and failure to instruct employee to wear protective clothing or provide him with protecting clothing not equivalent to removal of safety device from machine).
To permit all actions based on negligence that "pertains to safety or adds to the plaintiff's risk" would be contrary to the intent of the legislature. Hallmark, 624 So.2d at 1062. We adhere to the view that "§ 25-5-11(c)(2) cannot be construed to allow a co-employee action in every situation where an employee is injured on the job and that any change in the limited right of action provided for in *Page 1104 
§ 25-5-11(c)(2) must be left to the legislature." Lane v. Georgia Cas. Sur.Co., 670 So.2d 889, 892
(Ala. 1995).
Because we conclude that Cumbie failed to produce substantial evidence indicating that her injury was proximately caused by the supervisory co-employees' willful removal of a safety guard or safety device, within the meaning of § 25-5-11(c)(2), we affirm the summary judgment.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown, and Johnstone, JJ., concur.
[1] Cumbie also sued LA under § 25-5-11(c)(1) and (c)(2) of the Workers' Compensation Act. These sections, however, recognize causes of action against co-employees, not employers. The trial court entered a summary judgment in favor of LA, holding that it was immune from civil liability. Cumbie does not appeal from the summary judgment in favor of LA. Cumbie also sued Shugart Manufacturing Company, whom she subsequently dismissed. Shugart is not a party to this appeal.