Eileen Thompson appeals the trial court's judgment approving a workers' compensation settlement agreement reached by Thompson and Colsa Corporation ("Colsa"). We reverse and remand with instructions.
Thompson was an employee of Colsa when, on July 12, 2002, she suffered an on-the-job injury to her neck. After negotiations, the parties, on June 18, 2004, filed a joint petition for approval of a settlement agreement reached by the parties ("the first settlement agreement"). The first settlement agreement stated that Colsa had paid Thompson $36,477.90 in medical benefits and $9,430.70 for 26 weeks of temporary-total-disability benefits and further provided that Colsa would pay Thompson an additional $12,252.03 in satisfaction of any workers' compensation claim that she might have against Colsa, including claims for vocational-rehabilitation benefits and disability-compensation benefits. That agreement left open the issue whether Thompson could recover future medical benefits.
Attached to the petition for approval of the first settlement agreement was a medical report prepared by Keith C. Anderson, D.O., who had examined Thompson. Dr. Anderson stated in his report that Thompson had ruptured the disk between her "C5" and "C6" vertebrae in her neck and had undergone surgery to fuse the vertebrae. Dr. Anderson further stated that Thompson had reached maximum medical improvement ("MMI") for her injury and that she had suffered a "15% impairment of the whole person" as a result of her injury. *Page 814 
On May 5, 2005, before the trial court had ruled on the June 18, 2004, petition, Thompson filed a motion to dismiss the petition. Thompson explained that, although she had initially assented to the first settlement agreement, after the parties had filed their joint petition for approval of the agreement, she had changed her mind. On May 18, 2005, the trial court granted Thompson's motion to dismiss the June 18, 2004, petition.
On June 21, 2005, the trial court, at Thompson's request, set aside its dismissal of the June 18, 2004, petition and restored the case to active status. On August 12, 2005, Thompson filed a complaint for workers' compensation benefits in which she claimed that she had been advised that further surgery would be necessary to correct her injury and requested benefits pursuant to the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975. She also claimed that because further surgery would be necessary, she had not yet reached MMI. Colsa answered Thompson's complaint on August 17, 2005.
On May 30, 2006, the date set for the trial of Thompson's workers' compensation claim, the parties announced in open court that they had reached a second settlement agreement ("the second settlement agreement"). Pursuant to the second settlement agreement, Colsa agreed to pay Thompson $15,000 in satisfaction of all disability-compensation benefits, while leaving open the issues of future vocational-rehabilitation benefits and future medical benefits. The trial court discussed with Thompson the ramifications of her decision to settle, and Thompson confirmed her consent to the second settlement agreement.
On September 1, 2006, Colsa filed a motion with the trial court requesting that it "enforce" the second settlement agreement. At that time, the trial court had not yet entered a judgment approving the second settlement agreement. Colsa explained that Thompson had notified it that she no longer wished to proceed with the second settlement agreement. Colsa requested that the trial court enforce the second settlement agreement because the parties had both affirmed the settlement agreement in open court. Thompson responded to Colsa's motion to enforce the second settlement agreement on September 8, 2006. Thompson claimed that her on-the-job injury had worsened and that she would require additional surgery. As a result, Thompson requested that the trial court set aside the second settlement agreement.
Thompson attached to her response filed on September 8, 2006, a medical report prepared by Thomas J. O'Brien, M.D. In his report, Dr. O'Brien stated that Thompson's condition had worsened due to "more rapid degeneration of the disks above and below the site of the injury which occurred on [July 12, 2002]." Dr. O'Brien stated that, in his opinion, the degeneration had been caused by aging, by Thompson's "tobacco abuse," and by the first surgery to correct her on-the-job injury. Dr. O'Brien explained that Thompson would require additional surgery.
On November 14, 2006, the trial court entered a judgment approving the second settlement agreement. Thompson timely appealed to this court.
Although Thompson makes several arguments on appeal, we address only one of those arguments because we find it to be dispositive of the appeal.[1] Thompson argues *Page 815 
that the trial court erred by not setting aside the second settlement agreement after she filed her September 8, 2006, response to Colsa's motion to "enforce" the second settlement agreement.
Section 25-5-83, Ala. Code 1975, explicitly limits the enforcement of workers' compensation settlements that, like the settlement in this case, provide for workers' compensation benefits to be paid in a lump sum. Section 25-5-83 provides:
 "By agreement of the parties and with approval of the court, the amounts of compensation payable periodically, under this article and Article 4 of this chapter, may be commuted to one or more lump sum payments. No commutation shall be approved by the court unless the court is satisfied that it is in the best interest of the employee or the employee's dependent, in case of death, to receive the compensation in a lump sum rather than in periodic payments."
(Emphasis added.)
As § 25-5-83 indicates, a settlement reached by the parties that deviates from the Workers' Compensation Act by providing for a lump-sum payment cannot be enforced until the trial court approves it.
 "Furthermore, `the better practice is for the trial judge to make a specific finding on the record that the settlement is in the employee's best interest,' and, `[i]f the trial judge does not specifically make such a finding, then the record must affirmatively show that the settlement is in the employee's best interest.' Shaw [v. Dover Furniture Mfg. Co.], 700 So.2d [1382,] 1385 [(Ala.Civ.App. 1997)]."
Ex parte Ford, 782 So.2d 185, 187 (Ala. 2000).
In this case, the trial court made no specific finding that the settlement Thompson reached with Colsa was in her best interest. Therefore, we must determine whether the record affirmatively shows that approval of the second settlement agreement was in Thompson's best interest. Id. Before the trial court approved the second settlement agreement, Thompson submitted to the trial court the report of Dr. O'Brien indicating that Thompson would require additional surgery to remedy further degeneration in her neck that had occurred after the initial surgery that had been intended to correct her on-the-job injury. Though Dr. O'Brien's report does not specifically state that Thompson had not reached MMI, such a conclusion is plausible from a reading of the report. As this court has explained, "[t]he date of MMI indicates the date on which the claimant has reached such a plateau that there is no further medical care or treatment that could be reasonably anticipated to lessen the claimant's disability." *Page 816 G.UB.MK. Constructors v. Traffanstedt,726 So.2d 704, 709 (Ala.Civ.App. 1998). Dr. O'Brien's report indicated not only that Thompson would require additional treatment to lessen her disability, but also that her disability could be worsening. Therefore, Dr. O'Brien's report indicated that Thompson had not yet reached MMI.
Dr. O'Brien's report was written after the parties had negotiated their second settlement agreement and well after Dr. Anderson's initial report in which he stated that Thompson had reached MMI. As our supreme court has stated, "before a trial court can make a determination that an employee is permanently (and either partially or totally) disabled under the Alabama Workers' Compensation Act, the employee must have reached MMI."Ex parte Phenix Rental Ctr., 873 So.2d 226, 233
(Ala. 2003). This court has applied the above rule to cases involving settlements subject to court approval. See EdwardWiggins Logging Co. v. Wiggins, 603 So.2d 1094, 1095
(Ala.Civ.App. 1992).
We recognize that the trial court had before it Dr. Anderson's report, submitted when the parties sought approval of the first settlement agreement, in which he stated that Thompson had reached MMI and that the trial court questioned Thompson regarding her rights under the Workers' Compensation Act and her consent to the second settlement agreement. We also recognize that granting Thompson's requested relief would allow her, for the second time, to back out of a settlement reached in good faith by the parties and would create more delay in what has already been protracted litigation. However, as our supreme court has explained, we must be "`[e]ver mindful of . . . the well-established law that the "Alabama [Workers'] Compensation Act" is to be construed liberally to effect its beneficent purposes, [and] we [must] resolve all reasonable doubts in favor of the claimant.'" Cumbie v. L AContracting Co., 739 So.2d 1099, 1103 (Ala. 1999) (quotingMoore v. Reeves, 589 So.2d 173, 177 (Ala. 1991)). Therefore, in light of the new evidence that Thompson submitted to the trial court indicating that Dr. Anderson's MMI assessment may have been premature, we cannot hold that the record, without the trial court explicitly finding such, affirmatively shows that it is in Thompson's best interest to have the second settlement agreement approved. Accordingly, because the trial court did not make an explicit finding that the second settlement agreement was in Thompson's best interest, and because the record does not affirmatively show that the settlement is in her best interest, we reverse the trial court's judgment and remand the case for the trial court to hold a hearing to determine whether Thompson has reached MMI and whether its approval of the second settlement agreement is in her best interest.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
[1] We note that Thompson has not raised the issue whether, under § 25-5-56, Ala. Code 1975, the second settlement agreement entered into by Thompson and Colsa, which was an oral agreement, was unenforceable because it had not been reduced to a writing signed by the parties. Section 25-5-56 provides, in part:
 "No settlement for an amount less than the amounts or benefits stipulated in this article shall be valid for any purpose, unless a judge of the court where the claim for compensation under this chapter is entitled to be made, or upon the written consent of the parties, a judge of the court determines that it is for the best interest of the employee or the employee's dependent to accept a lesser sum and approves the settlement."
(Emphasis added.) Though § 25-5-56 can be read to indicate that the parties must give their written consent to a settlement for an amount less than the amount provided by the Workers' Compensation Act before that settlement may be approved by the court, we decline to address the applicability of § 25-5-56 to the second settlement agreement because Thompson did not raise that issue before the trial court or on appeal. See Ex parte Weaver, 871 So.2d 820, 823
(Ala. 2003) (holding that an appellate court may not review an issue on appeal that was not first presented to the trial court).