SELLERS, Justice.
This Court granted Bobby Saarinen and Chris Williams permission to appeal, pursuant to Rule 5, Ala. R. App. P., from an interlocutory order of the Franklin Circuit Court denying their motion for a summary judgment in Louis Hall's personal-injury action against them.
In May 2014, Hall was injured while operating a power saw at his place of employment, a plant owned by Williams Manufacturing, Inc. ("Williams Manufacturing"). Hall sued Williams Manufacturing, as well as his co-employees Saarinen and Williams, who were in 2014 and still are supervisory employees at Williams Manufacturing ("the co-employees"). The record indicates that Williams is the owner of Williams Manufacturing and that Saarinen is the plant manager.
In his complaint, Hall asserted theories of negligence, "willfulness," and "recklessness." Williams Manufacturing moved to dismiss the claims against it, asserting that Hall's exclusive remedy was under the Alabama Workers' Compensation Act, §§ 25-5-1 et seq., Ala. Code 1975. The trial court granted Williams Manufacturing's motion and dismissed Hall's claims against it. Subsequently, Hall amended his complaint to allege that the co-employees had "caused or allowed the removal of a guard from the saw made the basis of this suit," had "fail[ed] to install a safety guard provided for the saw," and had "fail[ed] to replace the unguarded saw with a new guarded saw."
The co-employees filed a motion for a summary judgment. In support, they pointed to § 25-5-11, Ala. Code 1975. Section 25-5-11(a) provides, in relevant part:
"If the injury ... for which compensation is payable under Articles 3 or 4 of [the Workers' Compensation Act] was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, ... the employee ... may bring an action against the other party to recover damages for the injury ..., and the amount of the damages shall be ascertained and determined without regard to [the Workers' Compensation Act]. If a party, other than the employer, is ... an ... employee of the same employer, ... the injured employee ... may bring an action against ... [the] person ... only for willful conduct which results in or proximately causes the injury ...."
(Emphasis added.) See also Padgett v. Neptune Water Meter Co., 585 So.2d 900, 901 (Ala. 1991) (" Section 25-5-11(a) provides that actions may be maintained *1106 against those parties that may be jointly liable with the employer, provided that if the other party is a coemployee, then his actions, in order to give rise to liability, must be willful.").
Section 25-5-11(b) provides: "If personal injury ... to any employee results from the willful conduct, as defined in subsection (c) herein, of any ... employee of the same employer ..., the employee shall have a cause of action against the person ...." As is relevant to this appeal, § 25-5-11(c)(2) defines "willful conduct" as follows:
"The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
In their summary-judgment motion, the co-employees established that, on the day he was injured, Hall was operating a power saw manufactured by Kalamazoo Industries, Inc. During depositions, the saw was described as a "straight cut-off saw." Although it is not entirely clear, photographs in the record appear to depict a saw with a round blade. Hall states in his appellee's brief that he used the saw to cut aluminum pipe, that "[t]he blade is above the table and the operator pulls it down by hand to cut the pipes on the table," and that, "[a]fter the cut takes place, the blade is spring loaded to return to the 'up' position."
The saw, which was purchased used by Williams Manufacturing, was manufactured with a guard covering a portion of the blade; Hall, however, did not think the guard was adequate. According to Hall's appellee's brief, "the guard on [the] saw did not fully cover the blade when the saw had finished cutting and sprung back to the 'up' position," at which point "the blade would be exposed by about 1 ½ inches." At Hall's request, someone at Williams Manufacturing installed an additional guard. Hall testified as follows during deposition:
"Q. [The saw] had that orange guard on it that's depicted in these pictures, correct?
"A. Yes.
"Q. And later on, at your request, they added this silver guard.
"A. Yeah.
"Q. And I assume that was supposed to cover more of the blade; is that right?
"A. It was supposed to have.
"Q. Okay. But your testimony is that the blade would come down below the silver guard, correct-
"A. Correct.
"Q. -when you were cutting or after you'd cut, I suppose?
"A. After. After the saw went back up.
"Q. Okay. Then did the-when the saw went back up, did the silver guard cover the blade?
"A. Not completely, no."
After Hall's injury, Williams Manufacturing replaced the saw with a power saw manufactured by a different Company-DeWalt. Hall testified during deposition that, before he was injured, Williams Manufacturing had already purchased the saw that eventually replaced the saw that injured Hall. He testified that the replacement saw had been delivered at least a month before his injury but had not been installed because, he was told, Williams Manufacturing was too busy to change out the saws. As Hall points out, the co-employees' motion for a summary judgment states that, "[w]hen Hall asked the [coemployee *1107 ] defendants when they were going to replace the saw on which he was working, they said when they were less busy." Hall also points to Saarinen's testimony indicating that Williams Manufacturing was "in the middle of [its] busy season" and that "we were making rounds and reminding everybody that just because we were busy, we didn't want to lose focus on safety, [and] we didn't want people to do anything to injure themselves and get hurt." According to Hall, he would not have been injured if he had been using the DeWalt saw because, he says, "it had a full wrap around guard." The trial court denied the co-employees' summary-judgment motion. Thereafter, pursuant to Rule 5(a), Ala. R. App. P., the trial court certified the following controlling question of law for this Court's consideration:
"Is the presence of another saw on the premises that had not been installed and [that] was not manufactured by the manufacturer of the saw in question the equivalent of the removal of a safety guard under Alabama Code [1975,] § 25-5-11(c)(2) ?"
This Court granted the co-employees' request for permission to appeal from the trial court's interlocutory order denying their summary-judgment motion.
Hall argues that the failure to replace the Kalamazoo saw in question with the newer DeWalt saw, which allegedly had a superior guard, was "tantamount to [the] removal of a safety guard under § 25-5-11(c)(2)."
"[T]his Court has, on limited occasions, liberally interpreted the concept of 'removal' within the context of § 25-5-11(c)(2). In Bailey v. Hogg, 547 So.2d 498, 500 (Ala. 1989), this Court held that the 'failure to install' a safety device provided by the manufacturer equated to the intentional and willful 'removal' of a safety device. Likewise, in Harris v. Gill, 585 So.2d 831, 837 (Ala. 1991), this Court held that the act of 'bypassing' an original safety device by installing an alternative safety device equated with the intentional and willful 'removal' of a safety device. Finally, in Moore v. Reeves, 589 So.2d 173, 178-79 (Ala. 1991), we held that the 'failure to maintain and/or repair a safety guard' equated with the intentional and willful 'removal' of a safety guard."
Cumbie v. L&A Contracting Co., 739 So.2d 1099, 1102 (Ala. 1999).
In the present case, there is no evidence indicating that the co-employees failed to install a guard provided by the manufacturer of the saw that injured Hall or that they failed to maintain or repair the guard provided. Moreover, although an additional guard was installed on the saw, that guard was not "an alternative safety device" in that the original guard was not bypassed.[1]
"To permit all actions based on negligence that 'pertains to safety or adds to the plaintiff's risk' would be contrary to the intent of the legislature. Hallmark[ v. Duke, 624 So.2d [1058], 1062 [ (Ala. 1993) ]. We adhere to the view that '§ 25-5-11(c)(2) cannot be construed to allow a co-employee action in every situation where an employee is injured on the job and that any change in the limited right of action provided for in § 25-5-11(c)(2) must be left to the *1108 legislature.' Lane v. Georgia Cas. & Sur. Co., 670 So.2d 889, 892 (Ala. 1995)."
Cumbie, 739 So.2d at 1103-04.
The Court declines to extend the definition of willfulness in § 25-5-11(c)(2) to encompass the circumstances involved in the present case. Accordingly, we answer the specific question certified by the trial court in the negative. Under the facts in this case, the failure to install another, presumably safer, saw that was present on the premises but that had not been put into operation and that was manufactured by a different manufacturer than the saw that injured the plaintiff is not the equivalent of the removal of a safety guard so as to constitute willful conduct under § 25-5-11(c)(2). Cf. Wadsworth v. Jewell, 902 So.2d 664, 669 (Ala. 2004) (failure to provide an employee with an ergonomic keyboard, even though the employer had access to ergonomic keyboards, did not constitute the removal of a safety device provided by the manufacturer of the computer the employee was using when the injury occurred).[2] The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Parker, Shaw, Main, and Wise, JJ., concur.
Bolin and Bryan, JJ., concur in the result.

We note that the portion of the record upon which Hall relies in asserting that the co-employees added a guard to the saw suggests that someone named "Nevell" added the guard. We also note that Hall does not assert that the addition of the second guard rendered the saw less safe.

The Court does not express an opinion as to whether the failure to install an allegedly safer machine that is present on the premises and made by the same manufacturer as the machine that injured an employee might come within the operation of § 25-5-11(c)(2).